IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHANE C. BORER,<br><br>     Petitioner,<br><br> vs.<br><br>ROB JEFFREYS,<br><br>     Respondent. | **4:25CV3098**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Petitioner Shane C. Borer's ("Borer") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Filing No. 1. Respondent argues that Borer's petition must be dismissed because it is barred by the limitations period set forth in 28 U.S.C. § 2244(d) and Borer's habeas claims are procedurally defaulted. The Court agrees and will dismiss the petition with prejudice.

## I. RELEVANT PROCEDURAL AND FACTUAL HISTORY[1]

### A. Conviction and Sentence

On April 14, 2021, in the District Court of Cass County, Nebraska, Borer was convicted following a bench trial of burglary, possession of methamphetamine, and theft by receiving. Filing No. 12-13 at 18. The state district court found him not guilty of false reporting. *Id*. Following an enhancement hearing, the state district court found Borer to be a habitual criminal and sentenced him to 12 to 15 years for burglary, 10 to 10 years for possession of methamphetamine, and 1 year for theft by receiving. *Id*. at 20–22.

---

[1] Much of the procedural and factual history is taken from Respondent's brief, which Borer does not dispute. *Compare* Filing No. 16 at 1–10, *with* Filing No. 21 at 1–10.

As set forth in the Nebraska Court of Appeals' postconviction appeal opinion,[2]

The evidence at trial established that in August 2020, Janis Hennings and Gary DeVos resided in a house in Louisville, Nebraska.  On the morning of August 9, Hennings discovered a shoeless man, later identified as Borer, standing in the kitchen holding a bag of donuts she had previously left on the counter.  Hennings yelled at the man to get out of the house and called for DeVos.  By the time DeVos arrived, the man had run down the stairs into the basement, apparently leaving by an exterior basement door.  Hennings and DeVos observed items strewn around the basement that did not belong to them and evidence of someone having used one of their towels to clean up.

When law enforcement arrived and inspected the basement, a police officer noted pry marks and damage to the strike plate on the exterior basement door, which DeVos indicated had not been there previously.  Items observed in the basement that did not belong to Hennings and DeVos included two backpacks, several sets of keys, wet clothing hanging from an I-beam, a wet pair of shoes, and a wallet containing Borer's driver's license.  When the officer searched one of the backpacks, he located a glass pipe containing methamphetamine residue. Hennings and DeVos denied ownership of the glass pipe, and Hennings denied using methamphetamine.  A drinking glass belonging to Hennings and DeVos was found in the basement, partially full of water.  Hennings and DeVos denied taking the glass into the basement.  Another one of their drinking glasses was later found outside by a neighbor.  Hennings and DeVos denied placing the glass outside, and

---

[2] *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

Hennings indicated she had not given the glass to the neighbor.  Hennings and DeVos also later located a camera that had been removed from a desk drawer in their spare bedroom and denied having removed the camera from the drawer themselves.

While one police officer was with Hennings and DeVos on the morning in question, another officer observed a man matching the burglary suspect's description and later identified as Borer at an intersection about one block away from the residence.  Borer was standing next to a car without any license plates and was loading items into the car's trunk.  When asked where he was staying, Borer pointed in the direction of the Hennings and DeVos residence and claimed that a woman named Hannah was allowing him to stay there.  He also claimed that someone had stolen his shoes and that his driver's license was in the car's center console.  Police identified the car as one that had previously been stolen from a construction job site along with some electronics and hand tools.  When police recovered the car from Borer, it was filled with trash, debris, clothes, and other items including some blank checks, none of which belonged to the car's owner.  At trial, the car owner identified one of the backpacks recovered from the burglary scene and some work gloves found inside the backpack as items that had been stolen from him.  The car owner denied ownership of the glass pipe with methamphetamine residue also found in the backpack, and he indicated that he did not use drugs.  The evidence at trial established values for the backpack and car.

3

Filing No. 12-4 at 1–2; *see also State v. Borer*, No. A-24-109, 2025 WL 601983 (Neb. Ct. App. Feb. 25, 2025).

## B. Direct Appeal

Borer, with new counsel, filed a direct appeal, assigning that (1) the state district court erred in finding sufficient evidence to convict him of burglary, possession of methamphetamine, and theft by receiving, and (2) his trial counsel was ineffective in failing to (a) advise Borer of the deadline for a new trial motion, (b) call Borer as a witness at trial, (c) investigate, find, or subpoena Hannah, (d) test items for DNA or fingerprints, and (e) move for a mistrial. Filing No. 12-3 at 5. In a Memorandum Web Opinion dated September 27, 2022, the Nebraska Court of Appeals rejected Borer's sufficiency of the evidence claim on the merits. *Id*. at 1, 5–8; *see also State v. Borer*, No. A-21-720, 2022 WL 4476023 (Neb. Ct. App. Sept. 27, 2022). As for Borer's claims of ineffective assistance of counsel, the appellate court found that there was no merit to claims (a) and (e) and that the record was insufficient to address claims (b), (c), and (d). Filing No. 12-3 at 9–10.

Borer did not file a petition for further review in the Nebraska Supreme Court. Filing No. 12-1 at 5. The Nebraska Court of Appeals entered its mandate on October 28, 2022, *Id*., and the state district court entered judgment on the mandate on October 31, 2022, Filing No. 19-1.

## C. Postconviction Proceedings

On October 20, 2023, Borer filed a timely pro se motion for postconviction relief, which the state district court denied without an evidentiary hearing on January 17, 2024. Filing No. 12-14 at 21–69, 72–78. Borer appealed, and on February 25, 2025, the

Nebraska Court of Appeals entered a Memorandum Web Opinion affirming the lower court's judgment. Filing No. 12-4.

In his motion, Borer raised 16 claims for relief, alleging ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and seeking declaratory relief. *Id*. at 3–4. On appeal, the Nebraska Court of Appeals found that the state district court did not err in denying Borer's request for declaratory relief. *Id*. at 12. Regarding Borer's claims of ineffective assistance of trial counsel, the appellate court found that six of those claims were procedurally barred because they were not brought on direct appeal as required under Nebraska law. *Id*. at 4–5. As for the ineffective assistance of trial counsel claims properly before the court, the Nebraska Court of Appeals found those three claims to be without merit. *Id*. at 5–8. Regarding Borer's claims of ineffective assistance of appellate counsel, the appellate court rejected those claims, finding them to be either without merit or insufficiently alleged. *Id*. at 8–12.

Borer filed a petition for further review on March 28, 2025, but it was denied by the Nebraska Supreme Court as untimely filed. Filing No. 12-2 at 4. The mandate was issued April 4, 2025. *Id*.

**D.  Habeas Petition**

Borer filed his habeas petition on April 18, 2025. Filing No. 1. The petition contains a declaration that it was placed in the prison mailing system on April 13, 2025. *Id*. at 24. As set forth by this Court, Borer's habeas petition alleged the following potentially cognizable claim:

Claim One:      Petitioner was denied the effective assistance of counsel because trial counsel (1) failed to investigate,

find, or interview Hannah; (2) failed to call Petitioner as a witness to testify in his own defense; (3) failed to test the pipe, drinking glasses, and camera for DNA and/or fingerprints; and (4) failed to move for mistrial or object to the prosecutor's questioning of Deputy Murphy, which used Petitioner's silence to establish guilt, and to the prosecutor's coaching of other witnesses.

Filing No. 8 at 1–2.

Respondent filed his answer, Filing No. 15, a designation of state court records, Filing No. 12, and a brief, Filing No. 16. Borer filed a Request for Additional Records, Filing No. 17, and, as directed by the Court, Respondent filed a response to the request and attached three additional records Borer requested, Filing No. 19. Borer filed a reply, Filing No. 20, a brief, Filing No. 21, and supporting exhibits, Filing No. 22. Respondent filed his reply brief, Filing No. 23, and this matter is fully submitted for disposition.

## II.  ANALYSIS

Respondent submits that Borer's habeas petition must be dismissed because it was not timely filed and is barred by the limitations period set forth in 28 U.S.C. § 2244(d) and, alternatively, Borer's habeas claims are procedurally defaulted. Upon review, the Court agrees.

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, establishes a one-year limitations period for state prisoners to file for federal habeas relief that runs from the latest of four specified dates:

6

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The statute of limitations period is tolled while a state post-conviction or other collateral review is pending.  *King v. Hobbs*, 666 F.3d 1132, 1135 (8th Cir. 2012) (citing 28 U.S.C. § 2244(d)(2)).

Here, the Nebraska Court of Appeals affirmed Borer's convictions and sentences on direct appeal on September 27, 2022, and Borer had until October 27, 2022, to petition the Nebraska Supreme Court for further review.  *See* Neb. Ct. R. App. P. § 2-102(F)(1) (stating that a petition for further review and memorandum brief in support must be filed within 30 days after the release of the opinion of the Court of Appeals or the entry of the order finally disposing of the appeal).  Borer did not file a petition for further review and so his judgment became final for purposes of the AEDPA one-year limitations period on October 27, 2022.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that, for a state prisoner who does not seek review in a State's highest court, the judgment becomes "final" for purposes of § 2244(d)(1)(A) on the date that the time for seeking such review expires).  While Borer argues that his conviction was not final until the state district court entered its judgment on the mandate on October 31, 2022, Filing No. 21 at 11, this Court disagrees and finds the rule in *Gonzalez v. Thaler*, *supra*, controls the date on which

7

Borer's conviction became final, which here is October 27, 2022, when the time for filing a petition for further review expired. *See, e.g.*, *Toegan v. Jeffreys*, No. 8:25CV632, 2026 WL 145588, at *3 (D. Neb. Jan. 20, 2026) (finding petitioner's judgment became final 30 days after the Nebraska Court of Appeals affirmed petitioner's convictions and sentences and time for seeking further review expired). Accordingly, the one-year limitations period began to run from October 27, 2022.

The statute of limitations was tolled during the pendency of Borer's state postconviction proceedings beginning on October 20, 2023, when he filed his state postconviction motion. Borer filed his state postconviction motion 358 days after his conviction became final, and those 358 days count toward the one-year limitations period. *See Bear v. Fayram*, 650 F.3d 1120, 1122 (8th Cir. 2011) (quoting *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001)) ("'[T]he time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period.'"). The limitations period was tolled until April 4, 2025, when the Nebraska Court of Appeals issued its mandate on Borer's postconviction appeal. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (state postconviction application "remains pending" until "the State's highest court has issued its mandate or denied review" and "the 1–year limitations period [is not tolled] during the pendency of a petition for certiorari"). Thus, the statute of limitations began to run again on April 4, 2025.

Because 358 days had already expired from the one-year limitations period, Borer had 7 days remaining after the tolling period ended on April 4, 2025, to file his habeas petition, or, in other words, until April 11, 2025. Borer's habeas petition was not filed until April 13, 2025, at the earliest. *See Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir.

1999), *abrogated on other grounds by Riddle v. Kemna*, 523 F.3d 850 (8th Cir. 2008) (holding that, "for purposes of applying 28 U.S.C. § 2244(d), a pro se prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court"). Borer's petition is, therefore, untimely under 28 U.S.C. § 2244(d)(1).

Borer has not presented any arguments to support the application of equitable tolling or the miscarriage of justice exception to the statute of limitations bar, and, upon careful review of the record, the Court finds no reason to equitably toll the limitations period or excuse its procedural bar. Thus, Borer's habeas petition is barred as untimely.

## B. Procedural Default

Even if Borer's habeas petition was timely filed, the Court is precluded from reviewing his habeas claims because they are procedurally defaulted. As set forth in 28 U.S.C. § 2254:

> (b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)    (i)    there is an absence of available State corrective process; or
>
> (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

9

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim is presented to the trial court, and then on appeal to either the Nebraska Supreme Court directly[3] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n.1.

---

[3] The Court notes that in some situations, such as where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106.

10

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In addition, "[t]he Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 *et seq*. (Reissue [2016 & Cum. Supp. 2024]), is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights," but "the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Sims*, 761 N.W.2d 527, 533 (Neb. 2009). "[A]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *Id*. Furthermore, in 2011, the Nebraska Legislature created a one–year time limit for filing a verified motion for postconviction relief. *See* Neb. Rev. Stat. § 29–3001(4); *State v. Smith*, 834 N.W.2d 799, 801 (Neb. 2013).

### i. Subparts (1), (2), and (3) of Claim One

Borer raised the three allegations of ineffective assistance of trial counsel in subparts (1), (2), and (3) of Claim One in his direct appeal, and the Nebraska Court of Appeals determined the record was insufficient to address the claims. Filing No. 12-3 at 9–10. Borer then raised the same three claims in his postconviction motion and again on appeal to the Nebraska Court of Appeals, which rejected the claims on the merits. Filing

11

No. 12-4 at 5–8. Borer attempted to raise these three claims in a petition for further review, but the Nebraska Supreme Court rejected Borer's petition as untimely. Filing No. 12-2 at 4. As a result, subparts (1), (2), and (3) of Claim one were not subjected to one full round of review by the Nebraska state courts.

Borer argues that his postconviction petition for further review should have been considered timely because he mailed it prior to the March 27, 2025, filing deadline and, he speculates, the state appellate court clerk should have received his petition prior to the deadline, but did not file it until after the deadline. Filing No. 21 at 14–15. Petitions for further review to the Nebraska Supreme Court must be made "in the manner prescribed by the rules of the Supreme Court," Neb. Rev. Stat. § 24-1107, and the rules clearly state that "[a] petition for further review and memorandum brief in support must be filed within 30 days after the release of the opinion of the Court of Appeals or the entry of the order of the Court of Appeals finally disposing of the appeal, whichever occurs later," Neb. Ct. R. App. P. § 2-102(F)(1). Additionally, Nebraska does not have a prisoner delivery rule, *see, e.g.*, *State v. Parmar*, 586 N.W.2d 279 (Neb. 1998), and Borer's arguments against application of this precedent to his case are unavailing, *see* Filing No. 21 at 15. As Nebraska courts are vested with the authority to interpret their own procedural rules, the Nebraska Supreme Court's determination that Borer's petition for further review was untimely is binding on this Court. *See Clemons v. Luebbers*, 381 F.3d 744, 751 (8th Cir. 2004) ("[F]ederal courts do not look at whether state courts have correctly applied their own procedural rules."). Because Borer did not invoke one complete round of Nebraska's established appellate review process and he is now barred

from raising his claims in a successive postconviction motion, subparts (1), (2), and (3) of Claim One are procedurally defaulted.

### ii. Subpart (4) of Claim One

As Respondent points out, Borer's allegation of ineffective assistance of trial counsel in subpart (4) consists of two parts. The first part, which alleges trial counsel's ineffectiveness for failing to move for mistrial or object to the prosecutor's questioning of Deputy Murphy, was raised on direct appeal and rejected by the Nebraska Court of Appeals on the merits. Filing No. 12-3 at 10. Because Borer did not file a petition for further review in the Nebraska Supreme Court on direct appeal, *see* Filing No. 1 at 2; Filing No. 12-1 at 5, Borer failed to present the first part of subpart (4) through one complete round of review in the state courts, and the claim is procedurally defaulted.

The second portion of subpart (4) alleges trial counsel's ineffectiveness for failing to move for a mistrial or object regarding the prosecution's coaching of other witnesses. However, Borer did not raise this allegation in his direct appeal. *See* Filing No. 12-3 at 10; Filing No. 12-6 at 26. Because Borer was represented by different counsel on appeal, he was required to raise all claims of ineffective assistance of trial counsel in his direct appeal. *E.g.*, *State v. Rezac*, 15 N.W.3d 705, 718 (Neb. 2025) ("When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding."). The second part of subpart (4) is, thus, procedurally defaulted.

13

### iii.  No Excuse for Procedural Default

Borer failed to subject all four subparts of Claim One to one complete round of review in the Nebraska courts.   This Court is, therefore, procedurally barred from considering Borer's habeas claims unless he shows cause for the default and resulting prejudice or that failure to consider his claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  Upon careful review, the Court concludes Borer has failed to make such a showing.

Borer argues he was unaware "of the legal procedures and process to file a petition for Further Review, nor that the failure to do so would procedurally default him Under Federal Law."  Filing No. 21 at 13.  However, "the law is clear that a petitioner's pro se status, limited education, below-average intelligence, or any unfamiliarity with the intricacies of the law or legal procedure are not sufficiently external to constitute cause overcoming a procedural default."  *Jones v. Jeffreys*, No. 8:21CV249, 2025 WL 1752348, at *19 (D. Neb. June 25, 2025) (citing *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992); *Stanley v. Lockhart*, 941 F.2d 707, 710 (8th Cir. 1991); *McKinnon v. Lockhart*, 921 F.2d 830, 832 n. 5 (8th Cir. 1990); *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (8th Cir. 1988); *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988)).  Borer's ignorance is insufficient to establish cause to excuse his procedural default.

With respect to the first portion of subpart (4) of Claim One defaulted on direct appeal, Borer argues his appellate counsel was ineffective because counsel failed to file a petition for further review and advised Borer that filing a petition for further review would be futile.  Filing No. 21 at 12.  "A claim of ineffective assistance of counsel must be presented to the state court as an independent claim before it may be used to establish

14

cause for procedural default . . . ." *Leggins v. Lockhart*, 822 F.2d 764, 768 n.5 (8th Cir. 1987) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)).  A federal habeas court is barred from considering an ineffective assistance of counsel claim as cause for the procedural default of another claim when the ineffective assistance claim has itself been inexcusably procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000). Borer did not present this ineffective assistance of appellate counsel claim in one complete round of review in the Nebraska state courts.   Thus, appellate counsel's allegedly erroneous advice relating to a petition for further review cannot serve as cause to excuse the procedural default of the first portion of subpart (4).   In addition, Borer's ineffective assistance of appellate counsel claim fails on the merits as he does not have a constitutional right to counsel beyond his direct review.   *See Martinez v. Hansen*, No. 8:17CV406, 2018 WL 2050569, at *5 (D. Neb. Apr. 27, 2018) (citing *Ross v. Moffitt*, 417 U.S. 600 (1974) (a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals) and *Wainwright v. Torna*, 455 U.S. 586 (1982) (petitioner was not denied due process of law by fact that retained counsel deprived him of his right to petition Florida Supreme Court for discretionary review by failing to timely file an application for review)).

Similarly, to the extent Borer may be claiming appellate counsel was ineffective for not raising the second part of subpart (4) on direct appeal, *see* Filing No. 21 at 13, such claim cannot serve as cause to excuse the procedural default because Borer did not raise this ineffective assistance of appellate counsel claim in his postconviction motion and on appeal.

15

Since Borer has not established "cause and prejudice" sufficient to excuse his procedural default, he "may obtain review of his constitutional claims only if he falls within the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (internal quotation marks and citation omitted). The miscarriage of justice exception requires a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup*, 513 U.S. at 327). Here, Borer has not presented any evidence or argument, nor has the Court's careful review of the record revealed any, to support a finding of actual innocence. Thus, Borer has failed to show his procedurally defaulted habeas claims must be considered to avoid a fundamental miscarriage of justice.

## C. Conclusion

In summary, Borer's petition is barred as it was filed beyond the one-year limitations period in 28 U.S.C. § 2244(d)(1). Alternatively, Borer's habeas claims are procedurally defaulted as he failed to present all four subparts of Claim One through one complete round of review in the Nebraska state courts. As Borer has failed to demonstrate cause and prejudice to excuse the default or that failure to consider his claim will result in a fundamental miscarriage of justice, the Court is barred from reviewing his claim and must dismiss the petition with prejudice.

## III. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). This Court cannot grant

such a certificate unless Borer "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do that, Borer must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon careful review, Borer has not made that showing, and this Court will not issue a certificate of appealability.

IT IS THEREFORE ORDERED:

1.    Borer's petition, Filing No. 1, is denied and dismissed with prejudice.

2.    The Court will not issue a certificate of appealability in this matter.

3.    The Court will enter a separate judgment.


Dated this 12th day of June, 2026.


BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge